# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 1:23M 210
)
2367 Bethabara Road, Apartment A9 )
Winston-Salem, NC 27106 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment (B)

located in the **Middle** District of **North Carolina**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment (A)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution/Possession with intent to Distribute Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Distribute/Possess with Intent to Distribute Controlled Substance |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Matthew La Valley
*Applicant's signature*

Matthew La Valley, ATF TFO
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 05/16/23

*Judge's signature*

City and state: Greensboro, North Carolina        L. Patrick Auld, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Matthew La Valley, Task Force Officer, Bureau of Alcohol, Tobacco, Firearms and Explosive (ATF), Greensboro, North Carolina, being duly sworn, depose and state as follows:

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been for approximately three years, as well as a Police Officer with the Winston-Salem Police Department, and have been for approximately nine years. Your affiant has received local, state and federal training in the identification and investigation of narcotics. Furthermore, your affiant has made and assisted with more than 200 arrests for narcotic related violations at both the state and federal levels.

2. This affidavit is submitted in support of an application for a search warrant for the residence located at 2367 Bethabara Road, Apartment A9, Winston-Salem, North Carolina; and located within the Middle District of North Carolina.

3. This has been an ongoing investigation since January 2023. The information contained in this affidavit is based upon information provided by other ATF special agents, ATF task force officer, and other federal, state and local law enforcement officers, public source documents such as police reports, telephone toll analysis, physical surveillance and my own personal investigation. The information contained in this affidavit is submitted for the sole purpose of

establishing probable cause for a search warrant mentioned herein. As a result, it does not contain every fact known to me concerning this investigation. Based upon all of the facts set out in the paragraphs below, I allege the following:

    a.    that the target of this investigation is engaged in long-term, continuing criminal activities, namely offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and conspiracy to distribute and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846;

    b.    that the evidence sought through the use of a search warrant listed herein will provide investigators with evidence of these crimes needed to establish the full scope and nature of the offenses being investigated; including determining the identity of additional co-conspirators, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs; and,

    c.    that there is probable cause to believe that such items of evidence, which represent the fruits and instrumentalities of said offenses, will be located within the location specified in this application, which is located within the Middle District of North Carolina.

4. Based upon my training and experience, as well as the other sources of information mentioned herein, I know the following:

    a. that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, pagers, scanners, cellular telephones and other instruments and papers relating to transportation, ordering, distribution, and sale of controlled substances. Further, that drug traffickers commonly "front" (provide on consignment) heroin and other controlled substances to their clients; and that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, including on their persons. Cellular telephones and the telephones are of evidentiary value with respect to the identification of subjects who have not yet been positively identified;

    b. that it is common for large scale drug traffickers to secrete contraband proceeds of drug sales, and records of drug transactions, in secure locations within their residences, their automobiles, their businesses and/or on their persons for ready access and to conceal these records from law enforcements.

    c. that persons involved in large scale drug trafficking conceal within their residences and businesses large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial

transactions relating to the obtaining, transferring, secreting, or spending of large sums of money obtained as a result of their participation in drug trafficking activities;

  d. that when drug traffickers amass large cash proceeds from the sale of drugs, the drug traffickers attempt to "legitimize" these profits. To accomplish this goal, drug traffickers utilize domestic banks and their attendant services, i.e., securities, cashier's checks, money drafts, wire transfers, letters of credit, brokerage houses, real estate and also shell transactions, and various business fronts to legitimize their profits made form narcotics trafficking;

  e. that drug traffickers maintain names, addresses or telephone numbers in books, ledgers, electronics storage devices or on papers which reflect the names, nicknames, code names, addresses, and/or the telephone numbers of their criminal associates, and may be used to identify coconspirators who have not been identified or located;

  f. that drug traffickers frequently take or cause to be taken photographs or other video images of themselves, their associates, their property, and other items of evidentiary value and that these traffickers usually maintain these photographs and video images in their possessions;

4

g. that the courts have recognized that unexplained wealth is probative of crimes motivated by greed, in particular, drug trafficking and money laundering;

h. that drug traffickers frequently maintain fictitious identification and other documents which are intended to conceal their identity and avoid detection by law enforcement, including fictitious driver licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance;

i. that drug traffickers frequently store and maintain paraphernalia used for the packaging, diluting, weighing and/or distribution of drugs inside their residence; including, but not limited to: scales, plastic bags, diluting agents, tape, plastic wrap, and other items used to conceal drugs during transportation such as chemical and other odor-masking agents;

j. that individuals involved in the collection, accounting, packaging, transportation and laundering of drug proceeds often maintain paraphernalia used to perform these tasks, including, but not limited to money counting machines, plastic wrap, bulk quantities of rubber bands, and other items used to conceal drug proceeds such as chemical and other odor-masking agents;

k. that drug traffickers most generally have in their possessions, that is, on their persons, in their vehicles, in their residence and/or in their business, firearms, including but not limited to hand guns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure the drug traffickers' property and persons. Such property may include, but not be limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and United States currency

l. that drug traffickers often place assets in names other than their own to avoid the detection of these assets by government agencies;

m. that drug traffickers often place assets in corporate entities in order to avoid the detection of these assets by governmental agencies;

n. that even though these assets are in other persons' names, that drug traffickers continue to use these assets and exercise dominion and control over them;

o. that these assets are hidden in order to evade the payment of taxes on income and/or prevent forfeiture in event of prosecution;

p. that large scale drug traffickers must maintain on hand large amounts of United States currency in order to maintain and finance their ongoing narcotics business.

## CRIMINAL ACTIVITIES OF ORGANIZATION

5. The subject of this investigation is engaged in the offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and conspiracy to distribute and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846. This investigation was initiated in January 2023, and has been ongoing to present. The investigation has thus far included the use of confidential sources, physical surveillance, controlled purchases, and telephone toll analysis. Among the goals of this investigation is to identify all members of the organization, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs.

## FACTS ESTABLISHING PROBABLE CAUSE

6. During the months of January 2023, February 2023, March 2023 and April 2023, TFO La Valley utilized an ATF Confidential Informant (CI)[1] to purchase suspected cocaine from an individual, Boyd, in Winston-Salem, North Carolina.

---

[1] The CI is a previously convicted felon and was cooperating seeking a finding of substantial assistance for pending felony charges

7

7. On April 27, 2023, TFO La Valley applied for and received a search warrant for the residence of 2201 E. 24th Street, Winston-Salem, North Carolina, signed by U.S. Magistrate Judge Peake.

8. On May 4, 2023, ATF personnel executed the aforementioned search warrant at 2201 E. 24th Street, Winston-Salem, North Carolina. During the course of the search, ATF personnel located approximately 780 grams of suspected cocaine and a firearm in the residence. Also located in the residence was a cell phone which Boyd provided TFO La Valley consent to review. This phone has the phone number 854-888-1160.

9. During the course of a *Mirandized* interview with Boyd, Boyd stated that she has been selling cocaine for the past five to six months. Boyd advised she would receive calls from a subject ("Subject 1"), who would then direct her to pick up the supply of cocaine from a source of the narcotic. Subject 1 is presently in Federal prison. Boyd indicated this subject was in her phone as "Bust it 2," as well as a second thread where it shows in both her text thread and on the app "Telegram." Boyd also indicated she and Subject 1 had a second thread on Telegram where he was utilizing an account that now showed "Deleted Account," but the thread was still visible.

10. Boyd stated she typically obtains two or three ounces at a time, every three to four weeks. She stated outside of this current cocaine she had in her possession; she obtains the narcotics from the same person. She stated that

8

the person she obtains the cocaine from is in Winston-Salem, NC. Boyd stated that over the past five months, she has "picked up" approximately eight (8) to twelve (12) ounces of cocaine. Boyd would advise she had been obtaining cocaine from the same source for the past several months, except for the cocaine found in her residence on the date of the search warrant execution. Boyd stated she had been obtaining "crack cocaine" from her original source of supply and that she did not know how to manufacture "crack" cocaine.

11. When asked where Boyd would typically meet the source of cocaine she had been going through, she advised she would meet him off University Parkway in Winston-Salem. TFO La Valley asked Boyd about the male who she obtains the cocaine from. She described him as a black male.

12. TFO La Valley examined the phone data within Boyd's cell phone. During the examination, TFO La Valley found a text thread involving a subject "Blk J" with an associated phone number of 336-XXX-XXXX. TFO La Valley entered this phone number into finance app "Zelle," the name associated with the account is "Shelton Davis." TFO La Valley then queried "Shelton Davis" in a police database and located a SHELTON DENARD DAVIS (B/M 2/15/1983), who has an alias of "Black J." TFO La Valley then queried the phone number 336-XXX-XXXX through Duke Energy and located a partial address "Winston Salem 2367 Bet************" associated with the phone number.

9

13. During the review of the text thread, TFO La Valley noted conversation he knows from his training and experience to be indicative of narcotic transactions.

14. The text communication with "Blk J" began on December 9, 2022, which Boyd provided her Cashapp handle stating "$NashicaR.... for Milt."

15. On February 28, 2023, "Blk J" provides Boyd an address of 2367 Bethabara Rd., Apt. 9, which Boyd responds, "on my way." This address coincides with the partial address associated with the phone number for SHELTON. This address is also a short distance from University Parkway, where Boyd advised she obtains cocaine.

16. On March 5, 2023, "Blk J" sends Boyd a message, "can u get back over here where u came last time," which Boyd responds, "Yeah I guess so Y thr now." "Blk J" then states, "Let me spin it and then I'm gone tell u to come on." Approximately 16 minutes later, "Blk J" texts Boyd and states, "I'm ready just come the door when u get here." TFO La Valley knows the process of manufacturing "crack" cocaine is a process commonly referred to on the street as "whipping," which the term "spin it" by Boyd is a direct reference to him "whipping" the cocaine into "crack."

17. On March 18, 2023, Boyd messages "Blk J," "I'm ready minus a hunnid. I'm waiting on some ppl but I gotta few moves to make now. U fuckn wit me or no? As soon as they call me u know I'll bring it right to u," which "Blk J"

10

responds, "I talked to bra just hit me when I ready." "Blk J" would later tell Boyd, "Can u come up here on 5th and Jackson and grab it."

18. On March 26, 2023, Boyd texts "Blk J," "Just got out of church Imma hit u n a few Whr u gonna b," which "Blk J" responds, "My house on the north," and later "Blk J" texts, "Hold on give me a min got to get everything together," followed by "I'm ready my house." Boyd then requests "Blk J" to respond to her residence, which he agrees to do. "Blk J" later texts Boyd, "Was tht 1500 u gave me," which she confirms "yes."

19. Reviewing the Telegram communication with the deleted account Boyd stated was associated with Subject 1, he observed an April 13, 2023, TFO La Valley conversation in which Subject 1 instructs Boyd to "Tell him take 63 to 77 and leave 21 soft Give meat 14 ready and 14 clean give Jed 14 Ready." Boyd responds, "U want me to say it like u typed it? To j" and then she asks "2350?", which Subject 1 replies, "Yeah that way we don't owe him nothing we to the good now." TFO La Valley knows through his training and experience street terms such as "soft" and "clean" are referring to powder cocaine and the amounts "21" and "14" are quantities of cocaine.

20. On April 14, 2023, Boyd texts "Blk J," "Take the 63 to 77 N 21 of clean" and then texts "Passing brandimere." This text thread coincides with the messages between Boyd and Subject 1 the previous day.

21. Boyd's phone showed that she had called "Blk J" on May 3, 2023.

11

22. After reviewing Boyd's cell phone, TFO La Valley responded to the area of 2367 Bethabara Road, Apartment A9, and observed a white in color Cadillac Escalade bearing North Carolina registration TKX-1157 parked in front of the apartment building. An inquiry of the vehicle registration revealed the vehicle to be registered to Monterio Davis. Based on jail visitation records from 2011, Monterio Davis, who the undersigned believes he is a brother of SHELTON DAVIS. It should be noted that 2367 Bethabara Road, Apartment A9, is approximately 1.9 miles from University Parkway and is also just past Brandemere Apartments, if coming from University Parkway, as stated by Boyd in her interview and in her text messages with "Blk J."

23. TFO La Valley conducted a query of DAVIS's criminal record and discovered DAVIS to be a convicted felon, having a 2011 federal conviction for conspiracy to distribute cocaine and possession with the intent to distribute cocaine, which he received a 140-month prison sentence and 60 months' probation.

24. On May 10, 2023, TFO La Valley contacted DAVIS's United States Probation Officer ("USPO"), who advised the phone number on file for DAVIS was 336-XXX-XXXX, the same phone number observed in Boyd's cell phone. The USPO advised TFO La Valley that he had a scheduled visit with DAVIS on May 14, 2023, due to DAVIS reporting a new address, 758 Petree Farm Lane, Rural Hall, NC.

12

Case 1:23-mj-00210-LPA   Document 1   Filed 05/16/23   Page 13 of 16

25. On May 10, 2023, TFO La Valley again responded to 2367 Bethabara Road, Apartment A9, and observed the white Cadillac parked in front of the apartment building. No subjects were observed coming and going from the vehicle.

26. On May 12, 2023, TFO La Valley conducted surveillance of 2367 Bethabara Road, Apartment A9, and again observed the white in color Cadillac parked in the parking lot. During surveillance, an unidentified female exited 2367 Bethabara Road, Apartment A9, and opened the driver door of the vehicle, briefly entered the vehicle, and then returned to Apartment A9.

27. On May 14, 2023, TFO La Valley was contacted by the USPO regarding the home visit conducted with DAVIS at 758 Petree Farm Lane, Rural Hall, NC. The USPO advised DAVIS was operating a white Cadillac Escalade bearing NC registration TKX-1157. The USPO also advised he did not believe DAVIS to be living at the address in Rural Hall, due to not observing any belongings for DAVIS in the residence and DAVIS stating he was sleeping on the couch. Furthermore, the USPO advised the address in Rural Hall is the residence of DAVIS' uncle.

28. TFO La Valley knows through his training and experience that subjects who are on probation and subject to warrantless searches often do not keep the narcotics they are selling at their reported probation address. This is done to prevent them from being subject to warrantless searches at locations

13

where they conduct their business of narcotic trafficking and reduces the likelihood of being caught engaging in criminal activity. TFO La Valley also knows through his training and experience that subjects on probation sometimes give family members address as to being location where the subject on probation is residing, however the subject is not actually living at the residence. This is done to again prevent law enforcement from identifying the true residence where the subjects are living and, again, to prevent the subject on probation from getting caught engaging in criminal activity.

## CONCLUSION

29. It is believed that the facts alleged herein establish the following:

   a. that the target of this investigation is engaged in long-term, continuing criminal activities, namely offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and conspiracy to distribute and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846;

   b. that the evidence sought through the use of a search warrant listed herein will provide Probable Cause to enter house and arrest him,

   c. investigators with admissible evidence of these crimes needed to establish the full scope and nature of the offenses being investigated; including determining the identity of members of the organization, the

14

sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs, firearms; and,

    d.    that there is probable cause to believe that such items of evidence, which represent the fruits and instrumentalities of said offenses, will be located within the location specified in this application which is located within the Middle District of North Carolina.

Respectfully submitted,
/S/ Matthew La Valley
Matthew La Valley
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Dated: May 16, 2023
Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

_____
Honorable L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina

15